**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Murray Richelson, | ) | CASE NO. 1:18 CV 1801 |
| | ) | |
| Plaintiff, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| vs. | ) | |
| | ) | |
| Liberty Insurance Corporation, | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

## Introduction

This matter is before the Court upon defendant's Motion to Dismiss (Doc. 8) This case

involves the interpretation of a homeowner insurance policy. For the following reasons, the

motion is GRANTED.

## Facts

Plaintiff Murray Richelson filed this Class Action Complaint in the Lake County

Court of Common Pleas against defendant Liberty Mutual Insurance Company (hereafter,

defendant or Liberty).[1] A First Amended Class Action Complaint was thereafter filed.

---

[1]     The parties have stipulated to the substitution of Liberty Insurance Corporation as
        the proper defendant in place of Liberty Mutual Insurance Company.

Defendant then removed the case to this Court on the basis of the Class Action Fairness Act.

The First Amended Complaint alleges the following. Plaintiff owns a residential home in Wickliffe, Ohio. On October 24, 2017, he suffered property damage to the roof, living room, office, and a bathroom during a windstorm. At the time of the loss, the home was insured by defendant. Under the policy[2], there was indemnity coverage for physical damage to the home caused by perils other than those specifically excluded. Plaintiff submitted a claim to defendant and requested payment for the damage. Defendant confirmed that the home had sustained damage due to a covered peril and that it had an obligation and duty to pay plaintiff for the actual cash value of the damaged portions of the home pursuant to the terms of the insurance policy. On November 11, 2017, an adjuster submitted a final estimate for repair of the damage. The adjuster's estimate found that plaintiff had suffered loss and damage to the home in the amount of $11,011.19. The adjuster calculated actual cash value (ACV) as repair or replacement cost of the damaged part of the property less depreciation. After subtracting a $1000 deductible, defendant made a net ACV payment of $4,356.75[3] to plaintiff. The policy contains a ROOF ACTUAL CASH VALUE endorsement (Roof ACV endorsement) that limits coverage for roof damage so that the insured only receives the depreciated value of the damaged roof rather than the replacement cost. Defendant estimated the cost of roof repairs as $8,960.00, but applied depreciation of $4,609.42. As a result, plaintiff claims he was only paid $4,350.58 for the roof damage. The entire amount of the depreciation was treated as unrecoverable. This meant that even when the work is completed for the full estimated cost,

---

[2]     The policy is attached to the First Amended Complaint.

[3]     All monetary figures are taken from the First Amended Complaint.

2

plaintiff is personally suffering the cost of those repairs.

Plaintiff also alleges he received less than half the cost of the roof repairs because of the Roof ACV endorsement that defendant falsely characterized as "ADDITIONAL COVERAGE" in the Policy Declarations page, when in fact it substantially diminished coverage. The endorsement reduces coverage by excluding parts of the roof such as the surfacing, vents, and flashing materials, from full replacement cost. Nothing about the endorsement added coverage, but took it away.

The First Amended Complaint alleges that plaintiff seeks to represent two classes: the Additional Coverage Class (generally, people having a Roof Actual Cash Value endorsement on their Liberty homeowner policy, covering a structure located in Ohio, who suffered a loss for which they were paid ACV instead of replacement value for the period commencing 8 years prior to the filing of this case to the date of trial) and the ACV Deductible Class (generally, people who suffered a loss under their Buildings Coverage A or B for which they were paid ACV and from which a deductible was subtracted for the same period described in the other class).

The First Amended Complaint sets forth three claims. Count One alleges breach of contract by defendant's promise of "additional coverage," but actually delivering reduced coverage. Count Two alleges fraud based on defendant's misrepresentation that it was delivering "additional coverage" while actually intending to deliver a policy with less coverage. Count Three alleges breach of contract by defendant's subtraction of the deductible from ACV payment made.

This matter is now before the Court upon defendant's Motion to Dismiss.

**Standard of Review**

"Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can

be granted. Fed.R.Civ.P. 12(b)(6). We assume the factual allegations in the complaint are true

and construe the complaint in the light most favorable to the plaintiff." *Comtide Holdings,*

*LLC v. Booth Creek Management Corp.,* 2009 WL 1884445 (6th Cir. July 2, 2009) (citing

*Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir.2008) ). In construing

the complaint in the light most favorable to the non-moving party, "the court does not accept

the bare assertion of legal conclusions as enough, nor does it accept as true unwarranted

factual inferences." *Gritton v. Disponett,* 2009 WL 1505256 (6th Cir. May 27, 2009) (citing *In*

*re Sofamor Danek Group, Inc.*, 123 F.3d 394, 400 (6th Cir.1997). As outlined by the Sixth

Circuit:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of
> the claim showing that the pleader is entitled to relief." "Specific facts are not
> necessary; the statement need only give the defendant fair notice of what the ... claim
> is and the grounds upon which it rests."*Erickson v. Pardus*, 551 U.S. 89, 93 (2007)
> (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). However,
> "[f]actual allegations must be enough to raise a right to relief above the speculative
> level" and to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at
> 555, 570. A plaintiff must "plead[ ] factual content that allows the court to draw the
> reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*
> *v. Iqbal*, 556 U.S. 662, 678 (2009).

*Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir.2012). Thus, *Twombly* and *Iqbal* require

that the complaint contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face based on factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550

U.S. at 570; *Iqbal,* 556 U.S. at 678. The complaint must contain "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do."

*Twombly,* 550 U.S. at 555.

### Discussion

Defendant moves to dismiss the First Amended Complaint on the basis that the fraud

count fails to state a claim because the alleged fraudulent omission was disclosed in the

policy, and the breach of contract counts fail because, under Ohio law [4], the Roof ACV

endorsement is part of the policy and the endorsement required defendant to adjust plaintiff's

loss in the manner that it did.

### (1) Fraud (Count Two) and Breach of Contract (Count One)

Defendant moves to dismiss the fraud (Count Two) and breach of contract (Count

One) claims which are both based on the "additional coverage" language.  The parties address

the claims together. Plaintiff argues that defendant committed fraud by portraying the Roof

ACV endorsement as "additional coverage" in the Policy Declarations even though it actually

diminished the coverage.  Plaintiff maintains that the Roof ACV endorsement, which removes

the roof from replacement cost coverage when the loss is caused by wind or hail[5], is

inconsistent with the representation that he was being provided "additional coverage."

Likewise, defendant breached the contract by failing to pay replacement cost for the roof

when it had promised "additional coverage" by the endorsement.

Defendant maintains that plaintiff cannot state a claim for fraud because the alleged

misrepresentation is belied by the plain language on the face of the policy documents attached

---

[4]     Plaintiff does not dispute that this case is governed by Ohio law.

[5]     Plaintiff does not dispute that, in effect, the endorsement states that for a premium
        credit, damage to the roof caused by wind or hail is settled at "actual cash value at
        the time of loss."

to the pleading. Nor did it breach the contract because it provided exactly what is spelled out in the policy in exchange for a premium credit. In fact, the First Amended Complaint alleges that defendant settled the loss pursuant to the terms of the Roof ACV endorsement.

To establish fraud under Ohio law, a plaintiff must show: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Bd. of Trustees of IBEW Fund Local No. 82 Pension Fund v. Bright Street, LLC*, 2018 WL 4560828 (S.D. Ohio Sept. 21, 2018(citing *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d (1986)). To establish a breach of contract under Ohio law, a plaintiff must show that "a contract existed, the plaintiff performed, the defendant breached, and the plaintiff suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560 (6th Cir. 2006).

Defendant argues that plaintiff's fraud claim is based on his admission that he did not read the policy because the Policy Declarations listed the endorsement as "Additional Coverage." Indeed, the First Amended Complaint alleges in pertinent part:

19. Because of Liberty's promises to Richelson in his Policy Declarations that this Roof ACV Endorsement was an "Additional Coverage" Richelson was misled into not inquiring further and rejecting the diminished coverage endorsement.

20. Because Liberty misrepresented the Roof ACV Loss Settlement endorsement as an "Additional Coverage" Richelson relied on these false and/or willfully misleading representations, did not inquire further, and was unaware that the endorsement actually reduced coverage, to wit: excluded parts of the roof such as surfacing, vents, and flashing materials, from full replacement cost.

6

23.  Richelson relied on Liberty's false and/or willfully misleading representations, did not inquire further, and was unaware that the endorsement actually reduced coverage, to wit: excluded parts of the roof such as surfacing, vents, and flashing materials, from full replacement cost, and left Richelson footing the bill for over half the cost of roof repairs.

The Court agrees with defendant's assertion that a party cannot claim to have been defrauded when the act of reading the contract would have revealed the information at issue. *See Kincaid v. Erie Ins. Co.,* 128 Ohio St.3d 322 (2010) (citations omitted) ("The insurer provides each policyholder with a copy of the written insurance policy that expressly discloses the potential availability of benefits, including reimbursement for expenses. The insured has a duty to examine the coverage provided and is charged with knowledge of the contents of the policy." ): *Haller v. Borrer Corp.,* 50 Ohio St.3d 10 (1990) ("If a person can read and is not prevented from reading what he signs, he alone is responsible for his omission to read what he signs."); *W.K. v. Farrell*, 167 Ohio App.3d (2006) (quoting *ABM Farms, Inc. v. Woods*, 81 Ohio St.3d 498, 692 N.E.2d 574 (1998)) ("It will not do for a man to enter into a contract, and when called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained.")  Additionally, defendant points out that plaintiff is an attorney, practicing for more than 37 years.

Defendant further contends that the Roof ACV endorsement *is* an "additional" coverage, meaning that it is a type of coverage that was not in the policy prior to the addition of the endorsement.  And, Ohio recognizes that "An insurance policy is a contract between the insurer and the insured... We examine the contract as a whole, which means that an endorsement is read as though it is within the policy."  *Ward v. United Foundaries, Inc.,* 129 Ohio St.3d 292 (2011).  *See also Penn Traffic Co. v. AIU Ins. Co.,* 99 Ohio St.3d 227

(2003)(citations omitted) ("When construing a general policy with an attached endorsement, we look at the contract in its entirety.. Therefore, we read the endorsement as if its terms were printed within the body of the general policy.") Defendant notes that under the "Discounts and Benefits Section" of the Policy Declarations, it states that "Your discounts and benefits have been applied to your total policy premium." The "Roof Actual Cash Value Loss Settlement Endorsement" is identified under that heading. Moreover, under the "Additional Coverages" heading found in the Policy Declarations, there is no *separate* deductible, premium, or coverage limit listed for the Roof ACV endorsement. Defendant maintains that it would have been unreasonable for plaintiff to have believed he was getting "higher" coverage for no additional premium. The first page of the Policy Declarations refers to the "Roof Actual Cash Value Loss Settlement Endorsement." No reasonable person could interpret this to mean that a roof loss would be settled on a replacement cost basis rather than an actual cash value basis. Consequently, defendant asserts, and this Court agrees, that there was no ambiguity in labeling the Roof ACV endorsement as "additional coverage."

Even if there were ambiguity, the endorsement would control. Ohio law finds that where "printed references in a declarations page of an insurance policy contain typewritten numerical designations relating to endorsements, the typewritten endorsement designations are controlling where the endorsement provisions conflict with the printed references in the same declarations page." *American Hardware Mut. Ins. Co. v. Mansfield Auto Truck Plaza,* 15 Ohio St. 3d 367 (1984). Here, the Policy Declarations contain a typewritten numerical designation which identifies "Roof Actual Cash Value (FMHO 3325 0312)." Thus, even if there were a conflict between the Policy Declarations and the endorsement (which is

8

identified with that number), the endorsement prevails.

For these reasons, Counts One and Two fail and plaintiff's arguments in opposition are not persuasive.

Plaintiff asserts that he "had been insured by Defendant on a replacement cost basis since 1986, and the Policy in force at the time of loss was a renewal policy with a policy period from April 28, 2017 to April 28, 2018." (Doc. 13 at 3) Plaintiff argues that defendant was required to provide specific notice of the change because this was a renewal policy which changed coverage provided by the original policy. However, in support of this assertion, plaintiff points to the Policy Declarations which only show that plaintiff has been a "Liberty Mutual Home Customer since 1986." The Policy Declarations state, "This package contains your homeowners renewal." There is no indication that plaintiff had been continually insured on a replacement cost basis since 1986 or that plaintiff had the same policy, renewing annually, since 1986. Moreover, the First Amended Complaint does not allege that this policy was the first one which contained the Roof ACV endorsement.[6] If plaintiff had alleged either, defendant could have attached prior policies which sought to disprove the allegations.

Plaintiff points out that also included in the Policy Declarations and under the heading "ADDITIONAL COVERAGES," defendant listed "Roof Actual Cash Value." And, just below that, defendant again stated that plaintiff was receiving "Additional Coverages" for his roof that would "add valuable protection" to plaintiff's replacement cost policy. According to plaintiff, any reasonable person reading the declarations page would have concluded that the

---

[6]     In fact, although not argued by defendant, the Roof ACV endorsement has a copyright of 1994. (Ex. 3) While this does not mean that it had been made a part of plaintiff's policy since that date, it clearly was not a new endorsement.

Roof ACV endorsement added or expanded coverage under the policy and did not reduce coverage. However, plaintiff's reference to the "added valuable protection" is erroneous and without basis. In fact, the section plaintiff refers to is entitled "Additional Coverages and Products Available." It states, "We've reviewed your policy and have identified additional optional coverages and products that can add valuable protection. Talk to your agent about purchasing the following coverages and products and whether they meet your needs." Thus, this section identifies separate coverages (specifically, for "home computer and smartphone," "identity fraud expense," or "water backup and sump pump overflow") which were available for plaintiff to purchase if he chose to do so. This section did not refer at all to the Roof Actual Cash Value coverage. There is no indication in the Policy Declarations that plaintiff was receiving "additional coverages for his roof that would add valuable protection" as plaintiff has posited in his brief. (Doc. 13 at 3)

Plaintiff also asserts that the section in the Policy Declarations which states "Important Information Regarding Changes to your Homeowners Policy" did not alert plaintiff to the fact that the Roof ACV endorsement diminished coverage given that the roof was no longer part of his home when the damage was caused by wind or hail. Again, the Amended Complaint does not allege that this policy period was the first to include the Roof ACV endorsement.

Plaintiff maintains that ordinary consumers do not know what actual cash value means and the term is not defined in the policy which results in customers not recognizing that they are not getting replacement cost for their damage. However, plaintiff states elsewhere, "Replacement cost is simple and easily understood by ordinary consumers- if my property is

10

damaged, the insurance company pays the full cost to repair or replace it." (Doc. 13 at 1)

Thus, presumably, a consumer who clearly understands the meaning of replacement cost

(which is also not defined in the policy), would be alerted to the fact that actual cash value is

something different from replacement cost. Moreover, defendant points out that Ohio cases

define actual cash value as "the cost of repairs minus depreciation, if any." Plaintiff is a

lawyer who could also have consulted a dictionary which defines actual cash value as "money

equal to the cost of replacing lost, stolen, or damaged property after depreciation."

([www.meriam-webster.com/dictionary](www.meriam-webster.com/dictionary))

Plaintiff argues that, contrary to Ohio law, defendant did not provide conspicuous

notice of the reduction in coverage caused by the endorsement. However, the Policy

Declarations did expressly refer to the "Roof Actual Cash Value Loss Settlement

Endorsement." Thus, the policy holder was on notice of an endorsement which settled roof

losses on an actual cash value basis. Additionally, the top of the one-page endorsement itself

stated, "THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT

CAREFULLY." Below that wording, it states (in bold): "**ACTUAL CASH VALUE LOSS**

**SETTLEMENT WINDSTORM OR HAIL LOSSES TO ROOF SURFACING**."

Finally, plaintiff argues he had the right to rely on the Policy Declarations which he

asserts conflicted with the endorsement. Plaintiff argues that an ambiguity arose due to the

fraudulent description of the endorsement on the Policy Declarations and, under Ohio law,

defendant is precluded from relying on the fraudulently described endorsement to avoid

coverage. Plaintiff maintains that defendant mislabled the endorsement as "additional

coverage" when it actually restricted coverage. But, the Court agrees with defendant that the

Policy Declarations page is not inconsistent with the endorsement. This Court addressed (and rejected) above the notion that "Additional Coverage" on the declarations page meant an increase in coverage. Furthermore, as also addressed above, the first page of the Policy Declarations refers to the "Roof Actual Cash Value Loss Settlement Endorsement" under the heading "Discounts and Benefits Section." As explained above, plaintiff understood what "replacement value" meant and even if he did not know the meaning of actual cash value, he must have known it was something different from replacement value. Simply put, the Court finds no inconsistency between the Policy Declarations which alerted to the settlement of a roof loss at actual cash value and the actual endorsement which did the same.

As there was no fraudulent representation or breach of contract in connection with the Roof ACV endorsement, Counts One and Two fail to state a claim.

**(2) Count Three**

As to the second breach of contract claim, plaintiff alleges that defendant breached the policy by subtracting a $1000 deductible from the ACV payment when it was only permitted to subtract the deductible from payments made under the replacement cost provisions. Again, defendant contends that this impermissibly ignores the endorsement. Rather, because plaintiff made a Section 1 loss claim for roof damage caused by a windstorm, the $1,000 deductible applied as clearly set forth in Policy Declarations: "Losses covered under Section 1 are subject to a deductible of: $1,000."

Plaintiff relies on *Bond v. Liberty Ins. Corp.,* 272 F.Supp.3d 1112 (W.D.Mo. 2017). As plaintiff notes, the *Bond* court looked to the policy language of the "loss settlement" provision and concluded that because, like here, it had separate provisions for ACV loss

12

payments and replacement cost loss payments, but that only the latter stated that payment was made "after application of the deductible," it was a breach of the contract to subtract the deductible from the ACV payment. As summed up by plaintiff, the court reasoned that because "the ACV loss provisions did not provide for application of the deductible, in the face of explicit reference to the deductible in the replacement cost provisions," the policy did not permit the insurance company to subtract the deductible from an ACV payment. (Doc. 13 at 18-19)  Plaintiff also relies on *Lafollette v. Liberty Mut. Ins. Co.,* 139 F.Supp.3d 1017 (W.D.Mo. 2015), decided by same district court judge in Missouri, which also concluded that because the policy only permitted an insurer to subtract the deductible from replacement cost provisions, not ACV payments, it was a breach of contract to do so.

Plaintiff maintains that the policy provisions at issue here are the same as those in *Bond* and *Lafollette* in that none of the provisions addressing ACV payments mention that the payments are subject to a deductible while the provisions addressing replacement cost payment state they are "subject to deductible."  As such, plaintiff asserts that "defendant breached the contract by subtracting the deductible from the ACV payment."  (Doc. 13 at 17) Again, the Court disagrees.

Initially, as noted by defendant, deductibles are not "subtracted" from a payment as plaintiff asserts.  Rather, "A deductible is, by definition, the portion of an insured loss to be borne by the insured before he is entitled to recovery from the insurer." *Dorsey v. Federal Ins. Co.,* 154 Ohio App.3d 568 (7th App. Dist. 2003) (quoting Black's Law Dictionary (6th Ed.1990)).  Thus, the deductible is the amount of loss an insured must bear before the insurer is obligated to make a payment. Because "deductible" has a plain, ordinary meaning, the

13

Court does not resort to construction as argued by plaintiff. "[W]here the words used in a

policy of insurance have a plain and ordinary meaning, it is neither necessary nor permissible

to resort to construction." *Sherwin-Williams Co.v. Insurance Co. of State of Pennsylvania,*

863 F.Supp. 542 (N.D. Ohio 1994) (quoting *Olmstead v. Lumbermens Mut. Ins. Co.* 22 Ohio

St.2d 212 (1970)).  Deductible has a plain, ordinary meaning and the Policy Declarations

clearly state that "Losses covered under Section 1 are subject to a deductible of : $1,000."

Plaintiff does not dispute that his loss fell under "Section 1- Property Coverages."  Thus,

because plaintiff made a Section 1 loss claim for roof damage caused by a windstorm, the

Policy Declaration unambiguously states that the $1000 deductible applies to his claim.

Even examining the policy as a whole, the Court agrees with defendant that the parties

intended for the $1,000 deductible to apply to all losses under Section 1, regardless of

whether the loss is settled on an RCV or ACV basis.  Section 1 of the policy lists four

Coverages: A. Dwelling, B. Other Structures, C. Personal Property, and D. Loss of Use.

Under the Loss Settlement provision of the policy, two of the four coverages (structures and

personal property) are settled on an ACV, not replacement, basis. [7]  (3. Loss Settlement. (a)(1)

and (3)).  Additionally, defendant notes that Loss of Use coverage is not settled under either

RCV or ACV basis because the coverage provides for payment of "additional living

expenses" or "fair rental value" when an insured's residence is "not fit to live in" because of a

loss. (See Coverage D, Doc. 1-4 at 49) Thus, plaintiff's interpretation that only losses settled

---

[7]      Although the policy provides that personal property is settled on a ACV basis,
         plaintiff's policy had an endorsement for replacement cost for personal property.
         (See Coverages on Policy Declarations referring to "Personal Property with
         Replacment Cost). However, as noted by defendant, the base policy contemplates
         ACV payment.

14

on a RCV basis are subject to a deductible would render the deductible provision superfluous as to three of the four coverages to which the policy states the deductible applies (i.e., losses covered under Section 1).  Consequently, plaintiff's interpretation is not reasonable.

For these reasons, Count Three fails to state a claim as well.

**Conclusion**

For the foregoing reasons, defendant's Motion to Dismiss is granted.

IT IS SO ORDERED.

       /s/ Patricia A. Gaughan
       PATRICIA A. GAUGHAN
       United States District Court
       Chief Judge

Dated: 12/11/18